UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMUEL GRIM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:12-CV-1576-AGF |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Samuel Grim's application for social security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 42 U.S.C. §§ 1381 *et seq.* Grim alleged disability due to high blood pressure, shortness of breath, back pains, trouble sleeping, depression, left leg pain, and left foot numbness. (Tr. 169.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 10.]

**I.**     **Background**

On July 17, 2009, Grim completed his application for SSI. (Tr. 120-122.) The Social Security Administration ("SSA") denied Grim's claim and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 74-79.) The SSA granted Grim's request and a hearing took place on January 25, 2011. (Tr. 89-93.) On May 20, 2011, the ALJ issued a written

---
[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

decision upholding the denial of benefits. (Tr. 13-23.) Grim requested a review of the ALJ's decision by the Appeals Council. (Tr. 8-9.) On June 27, 2012, the Appeals Council denied Grim's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Grim filed this appeal on August 31, 2012. [Doc. 1.] Grim filed a Brief in Support of Complaint on March 21, 2013. [Doc. 23.] The Commissioner filed a Brief in Support of Answer on June 4, 2013. [Doc. 30.] Grim filed a Reply Brief on July 1, 2013. [Doc. 31.]

**II.    Legal Standard**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir.

2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

**III.    ALJ Decision**

The ALJ determined that Grim had not engaged in substantial gainful activity since July 6, 2009. (Tr. 15.) The ALJ found that Grim had the severe impairments of degenerative disc disease of the lumbar spine and asthma, but he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16.) Next, the ALJ determined that Grim had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R § 416.967(c). (Tr. 17.) Based on the RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Grim could perform. (Tr. 22.) Therefore, the ALJ concluded that Grim was not under a disability as defined in the Social Security Act, since July 6, 2009. (Tr. 23.).

Grim contends that the ALJ improperly weighed medical opinions, erred in failing to find that he had a severe mental impairment and failing to include any mental limitations into the RFC, and inappropriately used his college attendance to draw conclusions regarding functioning and credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole.

**IV.    Administrative Record**

The relevant evidence before the ALJ is as follows:

**A.    Hearing Testimony**

Grim and vocational expert Chrisann Schiro-Geist testified at the administrative hearing. (Tr. 28-59.) Grim was represented by counsel.

1. **Grim's Testimony**

Grim testified that he was fifty-eight years old at the time of the hearing. (Tr. 33.) Grim graduated from high school and was currently attending community college full-time with a major in music. (Tr. 33-34.) His four classes last between 50 minutes and an hour and fifteen minutes. (Tr. 34.) Grim stated he was in prison between 2003 and 2006 for possession of controlled substances. (Tr. 36.) Grim has been drug-free since 2003. (Tr. 51.) Grim testified that between 1986 and 2009, he played with bands in night clubs, but he did not have steady work. (Tr. 37.) During his time playing with bands, he played the saxophone, but he can no longer play the saxophone due to his breathing. (Tr. 37.) Grim does not have a driver's license and uses the bus and metro train to travel. (Tr. 44.)

Grim testified that he gets depressed sometimes, but not as much as before because he is taking anti-depressants prescribed by Dr. Larisey. (Tr. 45.) Grim also sees a psychologist, Dr. Smith. (Tr. 45.) Grim's depression makes him dazed and he cries involuntarily. (Tr. 45-46.) The depression also makes it hard to concentrate and he has problems being around a large group of people or having people behind him. (Tr. 46-47.) Grim stated he does not have a problem in class. (Tr. 47.) He states that he sits in the back because of his back and so that no one can sit behind him. (Tr. 47.) Grim gets up at 7:00 a.m. and travels to school by bus. (Tr. 47.) After returning home from school, Grim eats, feeds his puppies, and studies before he starts to get tired. (Tr. 48.) Grim stated he missed two days of class during the semester to keep doctor's appointments. (Tr. 48.) He takes naps on the weekends and his sleep is better since he started taking his medication. (Tr. 49.) Grim keeps his room clean, does the dishes, brings the groceries in, and cooks a little bit. (Tr. 49-50.) Grim cannot mop, but he can sweep and vacuum. His

daughter does the laundry. (Tr. 50.) He cannot do yard work. (Tr. 50.) He speaks on the phone with his sister and children. (Tr. 50.) Grim goes to church and school on a regular basis. (Tr. 50.) Grim stated he likes to watch sporting events on TV and go fishing, but he had to give up softball. (Tr. 51.) Grim testified that he has been diagnosed with Hepatitis C. (Tr. 57.) He will start treatment after his current semester ends. (Tr. 58.)

### 2. Vocational Expert Testimony

Vocational Expert ("VE") Geist testified that a hypothetical individual with Grim's age, education and no past relevant work experience, who could perform medium work, with no concentrated exposure to pulmonary irritants and superficial social interaction could perform work as a packer, janitor, and fast food worker. (Tr. 53-54.) If the above hypothetical individual had to change positions from standing to sitting, he would be unable to perform medium work and the exertional level would probably need to be lowered to sedentary.

### B. Medical Evidence

Grim received treatment for pain in his left leg and back at Community Medical Centers between 2006 and 2007. Grim was diagnosed with hypertension, backache, and radiculopathy. (Tr. 220-222.) Dr. Philip Seu completed an internal medical evaluation of Grim on May 22, 2008. (Tr. 225.) Dr. Seu opined that Grim had chronic low back pain without significant functional limitations, dyspnea on exertion most likely secondary to a long history of tobacco use, and untreated hypertension. (Tr. 228.) Dr. Seu opined that Grim could stand, walk, and sit in an eight hour workday without limitations. (Tr. 228.) He also opined that Grim could lift and carry without limitations and did not have any postural, manipulative, visual, communicative, or workplace environmental limitations. (Tr. 228.)

On June 3, 2009, Grim visited the emergency room with complaints of high blood pressure, blurry vision, and general weakness. (Tr. 240.) He received a diagnosis of uncontrolled hypertension and received prescriptions for labeltol and dyazide. (Tr. 255.) Grim visited Dr. Khalida Qalbani with complaints of shortness of breath and chest tightness while walking, high blood pressure, and dizziness on August 6, 2009. (Tr. 258.) Dr. Qalbani diagnosed Grim with hypertension and bronchitis. (Tr. 259.) A chest x-ray showed hyperinflation in both lung fields and an increase in the AP dimension of the thorax. (Tr. 264.) The x-ray also showed no airspace consolidation and chronic obstructive pulmonary disease changes. (Tr. 264.)

On July 28, 2009, Grim visited Mary L. Montgomery, R.N., M.A. at Hopewell Center for mental health treatment. (Tr. 279-287.) Grim complained of depression, unemployment, and vague hallucinations. (Tr. 280.) Montgomery determined that Grim had major depressive disorder, past history of opioid dependence in remission, and nicotine dependence. (Tr. 285.)

Sherman Sklar, M.E., conducted a psychological evaluation of Grim on September 3, 2009. (Tr. 288-292.) Grim reported to Sklar that he suffered from back and leg pain, shortness of breath, and depression that affected his ability to focus and interfered with his sleep. (Tr. 288.) Sklar determined that Grim had depressive disorder, not otherwise specified and that his global assessment functioning ("GAF") score[2] was 45, indicating serious symptoms or serious impairment in social or occupational functioning. (Tr. 292.), DSM-IV-TR at 34.

On September 17, 2009, Dr. Marsha Toll completed a psychiatric review technique and mental RFC assessment after reviewing Grim's medical records. (Tr. 326-340.) Dr. Toll found that Grim had depressive disorder, not otherwise specified and polysubstance abuse, in sustained

---

[2] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

full remission. (Tr. 329.) Dr. Toll opined that Grim was mildly limited in activities of daily living and maintaining concentration, persistence, or pace and moderately limited in maintaining social functioning. (Tr. 334.) Dr. Toll opined that Grim was moderately limited in the ability to work in coordination with or proximity to others without being distracted by them and in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 339.) Dr. Toll determined that Grim could perform 1-2 step tasks in a low stress environment. (Tr. 336.)

On August 17, 2010, Dr. James Mikolajczak completed a psychiatric evaluation and Medical Source Statement after examining Grim. (Tr. 362-368.) Dr. Mikolajczak determined that Grim had major depression and a GAF score of 55, indicating moderate difficulty in social or occupational functioning. (Tr. 367), DSM-IV-TR at 34. Dr. Mikolajczak opined that Grim had mild limitations in understanding, remembering, and carrying out complex instructions and in the ability to make complex work-related decisions. (Tr. 362.) Dr. Mikolajczak recommended that Grim's medication be increased or changed to another anti-depressant. (Tr. 368.)

Grim returned to Hopewell Center for mental health treatment on August 26, 2010. (Tr. 388-392.) At his initial assessment, Dr. Erickson Smith diagnosed Grim with major depressive disorder, recurrent, with psychotic features and assessed his GAF as 50, indicating serious symptoms or impairment in social and occupational functioning. (Tr. 392.) Dr. Smith also examined Grim on August 27, 2010 and December 7, 2010. At both examinations, Dr. Smith noted that Grim was oriented times three and lacked any homicidal or suicidal ideations. (Tr. 378, 383.) Grim's affect was appropriate and his mood was stable. (Tr. 383.) Grim reported that school was going well and he expected to continue school and obtain a bachelor's degree.

8

(Tr. 378.) Grim also reported that his medications were working well, except that he was not sleeping well. (Tr. 378.)

Grim continued to receive treatment for his leg and back pain and hypertension from St. Louis Connect Care and Myrtle Hilliard Davis Comprehensive Health Center (Florence Hill) between September 2009 and December 2010. (Tr. 293-325, 341-358, 369-375, 394-413.)

## V.    Discussion

Grim contends that the ALJ erred, because he did not find that Grim's mental impairment was severe or include limitations for the impairment in the RFC. After the ALJ has determined that the claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 416.909, 416.920(a)(4)(i)-(ii). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 416.908. To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 416.920(c). A claimant is not disabled if his impairments are not severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

"If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Kirby*, 500 F.3d at 707 (citing *Page v. Astrue,* 484 F.3d 1040, 1043) (8th Cir. 2007). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708. In evaluating the severity of mental impairments, the Social Security Administration uses a special technique. 20 C.F.R. § 416.920a. The special technique analysis requires (1) determination of whether claimant has a medically determinable impairment, (2) identification of the symptoms, signs, and laboratory findings that substantiate the presence of the impairment, and then (3) rating the degree of functional limitation resulting from the impairment. 20 C.F.R. § 416.920a(b). After the degree of functional limitation from the impairment is rated, the severity of the mental impairment is determined. 20 C.F.R. § 416.920a(d).

In this case, the undersigned finds that the ALJ properly evaluated the severity of Grim's impairment in accordance with social security regulations at 20 C.F.R. § 416.920a. The ALJ evaluated the four functional areas of daily living, social functioning, concentration, pace, or persistence, and episodes of decompensation. (Tr. 16.) The ALJ found that Grim had no limitations in any of those areas and no episodes of decompensation; therefore he determined that Grim's mental impairment was not severe. (Tr. 16.) In support of the determination, the ALJ noted that Grim is a full-time student at St. Louis Community College. (Tr. 16.) Grim is able to prepare himself for school, take public transportation, and study for his classes. (Tr. 16.) The ALJ noted that although Grim stated it was hard for him to concentrate, he testified that he

missed only 2 days of school to keep doctor's appointments and studied every day when he returned home from class. (Tr. 16.)

Grim asserts that the ALJ's finding is inconsistent with the medical records, because Dr. Smith, Dr. Sklar, and Dr. Mikolajczak gave Grim GAF scores ranging between 45 and 55. Grim also asserts that the ALJ inappropriately used his college attendance against him. The undersigned finds that the ALJ's determination is supported by substantial evidence in the record as a whole. First, there is a very limited record of mental health treatment in this case. The Court may consider failure to seek mental treatment when determining a claimant's mental impairments. *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011).

Second, although Grim's GAF scores alone may have indicated serious or moderate symptoms of impairment, a closer examination of the clinical notes present a picture of less significant impairment. For example, Dr. Mikolajczak gave Grim a GAF score of 55, indicating moderate symptoms of impairment. His clinical notes indicate that Grim's mental status was normal, except that there was evidence of depression and sadness when discussing different parts of his life. (Tr. 367.) Dr. Mikolajczak noted that Grim was cooperative, quite intelligent, friendly, and oriented to time, place, and person. (Tr. 367.) He also noted that Grim's speech was relevant and coherent and there was no evidence of delusions, hallucinations, or confusion. (Tr. 367.) Dr. Mikolajczak indicated in the Medical Source Statement that Grim only had mild limitations in understanding, remembering, and carrying out complex instructions and in the ability to make complex work-related decisions. (Tr. 362.) Most importantly, Dr. Mikolajczak did not find Grim had any impairment in interacting with the public, supervisors, or co-workers or responding appropriately to usual work situations or changes in a routine work setting. (Tr. 363.)

In the notes of his psychological examination, Sklar indicated that Grim was appropriately dressed and groomed, made good eye contact, his speech was coherent, relevant, and logical, his affect was quite level and did not indicate any unusual depression, anger, or anxiety. (Tr. 290.) Sklar noted there was no evidence of thought disturbance, hallucinations or delusions, or current suicidal ideation. (Tr. 290.) Sklar also noted that Grim's responses to cognitive questions were "without problem." (Tr. 291.) By December 2010, Dr. Smith's notes indicate that Grim's medications were working with exception of some sleep deprivation and he was doing well in school. (Tr. 378.) On January 25, 2011, Grim testified that he does not get depressed liked he used to because he is taking anti-depressants. (Tr. 45.) "[The Commissioner] has declined to endorse the [GAF] score for use in the Social Security and [SSI] disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Jones v. Astrue*, 619 F.3d 963, 973-974 (8th Cir. 2010). "An ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones*, 619 F.3d at 974. In this case, the GAF scores do not match the medical evidence and the ALJ could afford greater weight to the doctors' substantive objective findings.

Third, the undersigned finds that the ALJ did not err in failing to include any mental limitations in the RFC determination. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all

---

[3] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall*, 274 F.3d at 1217. In this case, substantial evidence supports the ALJ's RFC determination. The ALJ properly considered all of the evidence in the administrative record and Grim has failed to meet his burden to prove that his mental impairment would cause a limitation of his RFC.

Fourth, the undersigned finds that Grim was not prejudiced by the ALJ giving more weight to Dr. Mikolajczak, a psychiatrist, than Sklar who is a master's level licensed psychologist. Grim is correct that both medical doctors and licensed psychologists are considered sources who can provide evidence to establish an impairment and provide medical opinions. 20 C.F.R §§ 416.913(a)(1)-(2); 916.927(a)(2). Regardless of the ALJ's comment about educational level, the clinical findings of Dr. Mikolajczak and Sklar were similar, despite the difference in GAF scores. As noted earlier, GAF scores are not determinative of disability or impairment. Further, even if the ALJ had not given greater weight to Dr. Mikolajczak due to his medical degree, there is no evidence the outcome would have been different. Therefore, Grim did not suffer any prejudice requiring reversal.

Finally, the undersigned does not believe that the ALJ inappropriately considered his college attendance to discredit him. It is appropriate for the ALJ to consider a substantial daily activity, such as college attendance, when assessing the severity of a claimant's impairments during the alleged period of disability. *See Forte v.* Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)

(ALJ noted that claimant attended classes and drove); *Tennat v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (proper for district court to consider plaintiff's part time college attendance as inconsistent with disability).

**VI. Conclusion**

Based on the foregoing, the undersigned recommends that the ALJ's decision be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Grim seeks in his Complaint and Brief in Support of plaintiff's Complaint be **DENIED**. [Doc. 1, 23.]

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Carolyn W. Colvin, Acting Commissioner of Social Security for Michael Astrue, former Commissioner of Social Security.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 15th day of January, 2014.

       /s/ Nannette A. Baker       .
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE